**Blanche Gwendola PATTON, Individually, et al., Plaintiffs,**

v.

**Percy LEE, Administrator of the Estate of Joseph B. Patton, Deceased, and the Travellers Insurance Company, Defendants.**

**Civ. A. No. 2429-P.**

United States District Court,
W. D. Kentucky,
Paducah Division.

April 8, 1975.

Dee L. McNeill, Hickman, Ky., Earle T. Osborne, Paducah, Ky., for plaintiffs.

Rodney A. Miller, Fulton, Ky., for defendants.

## MEMORANDUM OPINION AND ORDER

JAMES F. GORDON, Chief Judge.

This action is one by the plaintiff Blanche Patton, on behalf of her five infant children against the administrator of the Estate of her common law husband, Joseph B. Patton, and The Travellers Insurance Company, to recover the proceeds under a group life insurance policy. It was submitted to the Court upon the plaintiff's motion for summary judgment. The facts out of which the controversy arises are as follows:

Blanche Patton and Joseph B. Patton were living together as common law husband and wife and had so lived for approximately eighteen years during which period of time they became parents of five children, Joseph, Feleece, Lavette, Lenco and Jay. The birth certificates of these five children all show Joseph Patton to be their father. On September 21, 1971, Blanche Patton shot and killed Joseph B. Patton and was subsequently convicted in the Fulton Circuit Court of voluntary manslaughter.

At the time of Joseph's death he was an employee of the Illinois Central Gulf Railroad and a member of the Dining Car Employees Local No. 351. As a member of the union his employer furnished a group life insurance policy in the amount of ten thousand dollars ($10,000.00), written by the Travellers Insurance Company. Blanche Patton was the designated beneficiary under this policy. However by virtue of KRS 381.280 she was barred from taking the proceeds under the policy because she had taken the life of the named insured. The policy by its terms provided that in the case of no designated beneficiary or if no beneficiary survives at the death of the employee the proceeds of the policy shall be paid to the "employee's wife or husband if living at the death of the employee; if not living the employee's surviving children, equally; if none survives to the executors of the will or the administrators of the estate of the employee."

The administrator of Joseph Patton's estate contends that this clause is testamentary in nature and that the word "children" as used therein under Kentucky law cannot include illegitimate children. In support of this contention he cites: Marquette v. Marquette, 190 Ky. 182, 227 S.W. 157 (1921), Mays v. Commonwealth of Kentucky, Ky., 363 S.W.2d 110 (1962), and KRS 391.010, 391.030, to the effect that the word children as used in the statutes of descent and distribution does not include illegitimates.[1]

Although this Court is fully cognizant of the fact that it must apply the law of the Commonwealth of Kentucky where such law clearly exists, See: Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188. I am not persuaded that the cases

---

1. KRS 391.010, 391.030, are the Kentucky descent and distribution statutes. They set out in detail how the property of a decedent without a will shall be divided among the kindred. KRS 391.090(2), provides, "A bastard shall inherit only from his mother and his mother's kindred."

cited by the administrator are applicable to the subject here before me. The law seems to be settled to the effect that the alternative or contingent beneficiaries under a group life insurance policy take the proceeds of the policy when the primary beneficiary is disqualified by virtue of the fact that he or she kills the insured. See: 27 ALR 3d 837, Annotation, Insurance—homicide by the beneficiary. Here the children are not claiming under the Kentucky laws of descent and distribution, they are claiming as named beneficiaries under the contract of insurance. Therefore, the pivotal question in the case is whether the illegitimacy of the children disqualifies them as beneficiaries.

■ It would appear that if illegitimate children cannot be constitutionally excluded from a statutory scheme of workman's compensation they should not be excluded from a contractually furnished benefit program provided by the employer, unless the contract of insurance specifically requires it. In Weber v. Aetna Casualty and Surety Company, et al, 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed. 2d 768, the Supreme Court concluded that the equal protection clause of the 14th Amendment required illegitimate children to be given equal rights under a state workman's compensation act. The Court further concluded that the fact that such acts were designed by the states for the purported purpose of protecting legal family relationships would not save the act in face of a constitutional attack where the act distinguished between legitimate and illegitimate children in the compensation scheme and the inferior classification of a dependent illegitimate child bore no significant relationship to the recognized purpose of the act.

■ I am of the opinion that the foregoing reasoning is equally true of the proposition here before the Court. It is apparent from reading the policy that the insurance is designed for the protection of the dependent members of the insured's family and no significant state interest could or would be served by applying KRS 391.090(2). In fact, to do so would be to force a result in this case that the Court specifically condemned in the *Weber Case* (supra).

The relegation of the illegitimate offspring to that of an outcast citizen with limited rights is a part of our legal heritage springing from the English feudal system. Though it may have been necessary in its time, today's laws are increasingly moving in the direction of restoring the illegitimates rights.[2]

The Supreme Court of Ohio recently had before it the question of the rights of an illegitimate child to take as an alternative beneficiary under a group insurance contract identical to the one here before the Court, Butcher v. Pollard, 32 Ohio App.2d 1, 288 N.E.2d 204. In a well reasoned opinion the Court held that illegitimate children are entitled to protection against those laws whose discriminatory effect is irrational and without significant relationship to a state interest giving as its reason, "no child is responsible for his birth and penalizing the illegitimate child is an ineffective—as well as unjust—way of deterring the parent."

Joseph and Blanche Patton never saw fit to solemnize their marriage. Their reasons for not doing so do not appear in this record. What does appear is that they lived for several years in a common law relationship as father and mother to five children. This was a common law family. There are no outside interests such as other legitimate children involved. To penalize the children of Joseph and Blanche Patton by depriving them of the proceeds of the life insurance of their father under today's standards of right and wrong would in my opinion be judicially unacceptable.

The motion for summary relief is sustained. A separate judgment in conformity herewith will be entered by the Court.

2. 1 W. P. Blackstone, Commentaries 459.