Phynies and Flora
CRAWFORD, Petitioners,

v.

Martha Shoaf COLEMAN a/n/f of
Cornell Warren Shoaf, a Minor,
Respondent.

No. C–5039.

Supreme Court of Texas.

Feb. 18, 1987.

Rehearing Denied April 8, 1987.

Mark Huffman, Menaker & Huffman, Dallas, for petitioners.

Gerald A. Woolf, Smith Abney & Woolf, Houston, S.C. Cocanower, Joann Reyes, Fort Worth, for respondent.

SPEARS, Justice.

This is an insurance disqualification case involving the distribution of proceeds of life insurance policies. The trial court disqualified the primary beneficiary under the policy and awarded the proceeds to the contingent beneficiaries. The court of appeals affirmed. 701 S.W.2d 80 (Tex.App. 1985). We reverse that part of the court of appeals judgment awarding proceeds to one of the contingent beneficiaries and render judgment for Phynies and Flora Crawford.

On May 14, 1979, Sandra Shoaf was stabbed to death by her husband, Cornelius Shoaf. Sandra's life was insured under four insurance policies, each designating Cornelius as the primary beneficiary. The trial court disqualified Cornelius from receiving Sandra's death benefits because the jury found that Cornelius willfully caused Sandra's death. The contingent beneficiaries under the policies are Sandra's parents, Phynies and Flora Crawford (the Crawfords) and Sandra's stepson, Cornell. Cornell is Cornelius's son by a prior marriage. Martha Coleman is Cornell's mother.

After disqualifying Cornelius, the trial court awarded the proceeds of two of the four policies to the Crawfords as the contingent beneficiaries under those policies. Those proceeds awarded to the Crawfords are not a part of this appeal. The trial court also awarded the proceeds of the remaining two policies, Equitable Life Insurance Society of the United States policy No. N 78 227 787 and Metropolitan Life Insurance Company policy No. 28500–G, to Cornell Shoaf as the contingent benefi-

ciary. The court of appeals affirmed the trial court's judgment. The Crawfords dispute the award of the benefits of these two policies to Cornell.

The Equitable policy named Cornelius Shoaf as the "insured," and Sandra as the "insured spouse" under a family plan of insurance included in the policy. The preprinted language of the policy provides that the "beneficiary" of the insured spouse is "the insured, if living; if not living, the surviving children of the insured."

The Metropolitan policy was obtained by Cornelius Shoaf through his employment with the State of Texas as authorized by the Texas Employees Uniform Group Insurance Beneficiary Act, TEX.INS.CODE ANN. art. 3.50–2 (Vernon 1981). Sandra's life was insured under this policy at Cornelius's option. The preprinted beneficiary designations in this policy awarded proceeds at the insured's death to the insured's beneficiary, then to the insured's spouse, then to the insured's children, and then to the insured's parents.

It is undisputed that the distribution of these policy proceeds is governed by TEX. INS.CODE ANN. § 21.23 (Vernon 1981). Section 21.23 states:

> The interest of a beneficiary in a life insurance policy or contract heretofore or hereinafter issued shall be forfeited when the beneficiary is the principal or an accomplice in willfully bringing about the death of the insured. When such is the case, the nearest relative of the insured shall receive said insurance.

In construing § 21.23, this court has said that insurance proceeds are distributed to the nearest relative of the insured only "if *all* of the beneficiaries, primary and contingent, are disqualified from receiving such proceeds." *Deveroex v. Nelson,* 529 S.W.2d 510, 513 (Tex.1975). In *Deveroex,* the primary beneficiary murdered the insured. We construed § 21.23 as directing

distribution of the proceeds to the insured's adoptive son who was a designated beneficiary under the policy rather than awarding the proceeds to the adopted son and the insured's natural son who was not designated as a beneficiary.

▮ The Crawfords argue that the proceeds of the Equitable policy and the Metropolitan policy covering Sandra's life are distributable to them because they are Sandra's "nearest relative" upon Cornelius's disqualification. The Crawfords read *Deveroex* as directing proceeds to the contingent beneficiary only when the contingent beneficiary is expressly named and is an object of the deceased insured's obvious intent. Cornell argues that he should receive the proceeds because he is the contingent beneficiary under these policies, and distribution to the nearest relative is not triggered until all beneficiaries are disqualified. We agree that the Crawfords should receive the proceeds on Sandra's life, but for reasons different than those offered by the Crawfords.[1]

▮ It is undisputed that Cornelius has forfeited any interest in the proceeds because he willfully brought about Sandra's death. TEX.INS.CODE ANN. § 21.23 (Vernon 1981). Sandra is the "insured" under § 21.23. Affidavits signed by the Crawfords indicate they are Sandra's nearest relatives.

In *Deveroex,* we reasoned that distributing insurance proceeds to the nearest relative only if all beneficiaries were disqualified effectuated both the obvious intent of the insured and the legislature's objective to deny proceeds to the individual responsible for the insured's death. Upon review, we find our reasoning no longer persuasive.

As Justice Daniel stated in his dissent, our holding was contrary to the plain words of the statute. *Deveroex,* 529 S.W.2d at 514 (Daniel, J., dissenting). Jus-

---

1. We reject the Crawford's argument that we should distinguish between a beneficiary falling under a preprinted beneficiary provision in the policy and a beneficiary whose name is written into the policy. In each instance, the insured has selected the individual as a beneficiary even though by different means. There is no difference when an insured reads and agrees to the policy's preprinted beneficiary designations or when the insured writes out the name of the beneficiary.

tice Daniel correctly reasoned that § 21.23 contains a specific provision for payment of insurance proceeds when a beneficiary willfully causes the death of the insured. The specific provision directs payment of proceeds to the nearest relative. The fact that the legislature chose to withhold proceeds from the beneficiary/killer does not mean that the legislature intended that the nearest relative would succeed to the proceeds only upon the disqualification of all beneficiaries. Moreover, § 21.23 is:

> ... as much a part of the insured's contract as if it has been incorporated in the policy. *Camden Fire Ins. Ass'n v. Harold E. Clayton & Co.*, 117 Tex. 414, 6 S.W.2d 1029 (1928). The rights of parties to contract with respect to insurance are limited by state laws which are a part of every contract. *Scanlan v. Home Ins. Co.*, 79 S.W.2d 186 (Tex.Civ.App.— Beaumont 1935, writ ref'd); *Hamaker v. American States Ins. Co. of Texas*, 493 S.W.2d 893 (Tex.Civ.App.—Houston [1st Dist.] 1973, writ ref'd n.r.e.).

*Id.* at 514 (Daniel, J., dissenting).

Our reasoning that the *Deveroex* distribution scheme effectuates the obvious intent of the deceased is also incorrect. In *Deveroex*, we said the insured's "obvious intent" was evidenced by the designation of the contingent beneficiary. When a beneficiary willfully causes the death of the insured, however, we are confronted with a situation where reasonable people would not form an intent regarding the distribution of the proceeds. We may safely presume that neither Sandra, Cornelius, the Crawfords, nor Cornell envisioned the circumstances of Sandra's death when the policies were obtained.

It is clear that the legislature has deliberately chosen to direct the manner in which the benefits are awarded. The practice, as dictated by *Deveroex*, of beginning our inquiry under the statute, moving into the policy once a beneficiary is disqualified, and then moving back under the statute once we determine no qualified beneficiaries are present, is inconsistent with the explicit language of § 21.23. Instead, by following the language the legislature em-

ployed, the inquiry begins, proceeds, and ends under § 21.23. We, therefore, overrule our interpretation of § 21.23 in *Deveroex v. Nelson*, 529 S.W.2d 510 (Tex.1975), and hold that when any beneficiary under a life insurance policy willfully causes the death of the insured, the policy proceeds are distributed to the nearest relative of the insured.

We recognize that other jurisdictions have reached a different result on somewhat similar statutes and facts. *See, e.g., Brooks v. Thompson*, 521 S.W.2d 563 (Tenn.1975); *Beck v. West Coast Life Ins. Co.*, 38 Cal. 643, 241 P.2d 544 (1952); *Lewis v. Lewis*, 281 S.C. 388, 315 S.E.2d 816 (App. 1984). *But see Dowdell v. Bell*, 477 P.2d 170 (Wyo.1970); *cf. Gardner v. Nationwide Life Ins. Co.*, 22 N.C.App. 404, 206 S.E.2d 818 (1974) (follows statutory direction of awarding proceeds first to alternate beneficiaries not involved in insured's death and then to estate of deceased insured); IDAHO CODE § 15–2–803(j)(1) (1979) (directing distribution to insured's estate only if all beneficiaries disqualified). Moreover, we are aware that Cornell was in no way involved in Sandra's death. Today's opinion is not to be read as implying that Cornell falls under the corruption of blood doctrine. Rather, our holding recognizes the specific direction of § 21.23 that when a beneficiary willfully brings about the death of the insured, the proceeds succeed to the insured's nearest relative.

Accordingly, we reverse the judgment of the court of appeals and render judgment that Phynies and Flora Crawford are entitled to the proceeds from Equitable Life Insurance policy No. N 78 227 787 and Metropolitan Life Insurance Company policy No. 28500–G as the nearest relative of Sandra Crawford Coleman.

Concurring and dissenting opinion by KILGARLIN, J., joined by CAMPBELL, J.

KILGARLIN, Justice, concurring and dissenting.

I respectfully concur with the result that the court reaches in regards to the proceeds of the Metropolitan Insurance policy,

although disagreeing with the reasoning utilized by the court in reaching that result. I respectfully dissent to both the reasoning and the result reached by the court in respect to the proceeds of the Equitable Insurance policy.

In truth, this court need not overrule *Deveroex v. Nelson*, 529 S.W.2d 510 (Tex. 1975), in order to accomplish the result the court desires. Entirely consistent with *Deveroex*, yet allowing the proceeds of both policies to go to Phynies and Flora Crawford, would be to hold that when the "insured" manifests an intention as to a contingent beneficiary by writing in the name of that beneficiary on a policy application, the proceeds are disposed of according to the rule of *Deveroex*. But, if no intent as to the identity of a contingent beneficiary is made by writing in that name, but disposition is sought in accordance with printed policy terms, then the money would go to the nearest relative. Such a holding in this case would permit the Crawfords to recover, and still preserve the wisdom of adhering to the expressed intent of an insured.

However, the reason for my concurrence with the court as to the disposition of the proceeds of the Metropolitan policy is that under the policy, Phynies and Flora Crawford were entitled to the proceeds in any event. Even though Cornelius Shoaf had secured the policy as a result of his employment with the State of Texas, Sandra Shoaf was the insured. The pre-printed language of the policy provided:

Upon receipt of due proof of your death, while you are insured under the Group Policy, Metropolitan will pay the amount of insurance then in force on your life to the person or persons surviving at the date of your death in the following order of precedence:

First, to the beneficiary or beneficiaries designated by you on a signed and witnessed form received before death in your employing office. For this purpose, a designation change or cancellation of beneficiary in a will or other document not so executed and filed has no force or effect.

Second, if there is no designated beneficiary, to your widow or widower.

Third, if none of the above, to your child or children and descendants of deceased children by representation.

Fourth, if none of the above, to your parents or the survivor of them.

Fifth, if none of the above, to the duly appointed executor or administrator of your estate.

Sixth, if none of the above, to any other kin entitled under the laws of your domicile at the date of your death.

The court of appeals erred in concluding that Cornelius' son, Cornell, was the contingent beneficiary under the policy. The court of appeals apparently confused beneficiary designation with terms in another part of the policy. Cornell would have qualified as Sandra's "dependent" under the policy, even though he was her stepson. However, under the life insurance portion of the policy, the clear language states: "Upon receipt of due proof of your death ... *your* children" will take, "if none ... your parents." As it was Sandra's death which was the condition precedent to the payment of the proceeds, and as Sandra had no children (children not being defined under this portion of the policy to include stepchildren), Sandra's parents were the contingent beneficiaries. The foregoing presents a second alternative, at least in respect to the Metropolitan policy, that would allow the insurance proceeds to go to the Crawfords under article 21.23, but at the same time preserve the rule of *Deveroex*.

While I have first suggested an alternative that would allow the court to leave *Deveroex* intact, and at the same time permit the Crawfords to recover the proceeds of both policies, and, second, a contractual basis for allowing the Crawfords to recover the proceeds of the Metropolitan policy, I nevertheless dissent in respect to the Equitable policy. We are on dangerous grounds when we start altering terms of contracts in order to reach what we perceive to be fair and just results.

Under the Equitable policy, Cornelius Shoaf was the "insured" and Sandra was the "insured spouse." The language of the policy provided that the "beneficiary" of the insured spouse is "the insured, if living; if not living, the surviving children of the *insured.*" Clearly, Cornell was the surviving child of Cornelius, and under the clear terms of the policy was the contingent beneficiary. In *Deveroex,* this court held that insurance proceeds were distributed to the nearest relative under article 21.23 only "if *all* beneficiaries, primary and contingent, are disqualified from receiving such proceeds." 529 S.W.2d at 513. Texas thereby joined the majority of states in allowing contingent beneficiaries to recover. *See Brooks v. Thompson,* 521 S.W.2d 563 (Tenn.1975); *In Re Kaplans Estate,* 49 Misc.2d 335, 267 N.Y.S.2d 345 (1966); *Beck v. West Coast Life Insurance Co.,* 38 Cal.2d 643, 241 P.2d 544 (1952); *Neff v. Massachusetts Mutual Insurance Co.,* 158 Ohio St. 45, 107 N.E.2d 100, 103–04 (1952); *Metropolitan Life Insurance Co. v. Wenckus,* 244 A.2d 424 (Me.1968); *Carter v. Carter,* 88 So.2d 153, 160 (Fla.1956); *Maneval v. Lutheran Brotherhood,* 281 A.2d 502, 504 (Del.Super.1971); Annotations, 27 A.L.R.3d 794 (1969); 1 Appleman, *Law of Insurance* § 382 (1965).

I recognize today, as this court did in *Deveroex,* that the application of article 21.23 is difficult. However, I am persuaded by the court's reasoning in *Deveroex:*

'The language of section 21.23 does not suggest the intention of the legislature to forfeit the right of a guiltless named beneficiary' (citation omitted). Such construction ... effectuates the essential legislative objective of article 21.23, to provide for the exclusion from the policy proceeds of an individual who is a principal or an accomplice in bringing about the death of an insured. The legislative purpose in writing the second sentence of article 21.23 was merely to exclude the insurance proceeds from the insured's estate and thereby prevent the murderer from receiving such proceeds as an heir of the decedent's estate. *Greer v.*

*Franklin Life Insurance Co.,* 148 Tex. 166, 221 S.W.2d 857 (1949).

*Id.* at 513.

If the *Deveroex* application of article 21.23 is difficult, overruling *Deveroex* can only lead to mischievous and regrettable results. For example, under the new rule that this court lays down, it matters not if the insured designates in his or her own writing the identity of a contingent beneficiary. If the insured meets death by a willful act of the primary beneficiary, then irrespective of the clear intent of the insured that the contingent beneficiary be someone else, the nearest relative will always recover.

Hypothetically, let us assume that we have a person who is insured under a policy of insurance. That person has a child, who has abused, mistreated, stolen from, physically injured, and committed various and sundry other acts of maleficent conduct, against the insured. As proof of all of this, the insured, in a last will and testament, writes off that child as not taking a thin dime, and sets forth the reasons why. Let us further assume that the person's spouse is the primary insured under the policy and a close friend, niece, nephew, or anyone but the sole child, is designated by writing of the insured as the contingent beneficiary. Nevertheless, under the scenario previously outlined, should the insured's spouse murder the insured, then under the new rule laid down by this court, the insured's disinherited child, as the nearest relative, would recover. Surely, the court cannot intend this.

Admittedly, the insured in cases such as the one before us rarely anticipates being feloniously killed by the primary beneficiary. It is difficult to know what the actual intention of the insured would have been had the problem in question been brought to her attention. The record is silent as to Sandra's relationship with Cornell. It is clear, however, that an alternative beneficiary was provided in the insurance policy, and, in my opinion, the better view is to allow the proceeds to pass according to the alternative provisions of the

policy rather than go to Sandra Shoaf's nearest relatives.

Lord Justice Fry referred to this concept, stating: "In a word, it appears to me that the crime of one person may prevent that person from the assertion of what would otherwise be a right, and may accelerate or beneficially affect the rights of third persons, but can never prejudice or injuriously affect those rights." *Cleaver v. Mutual Reserve Fund Life Ass'n*, 1 Queen's Bench 147, 160 (1892). Accordingly, I would affirm that portion of the court of appeals' judgment entitling Cornell to receive the proceeds from the Equitable Life Insurance policy and reverse that portion of the judgment awarding the proceeds of the Metropolitan Life Insurance policy to him.

CAMPBELL, J., joins.