The RELIABLE LIFE INSURANCE COMPANY, Plaintiff,

v.

Catherine SPURGEON, Defendant/Respondent,

v.

Stanley BROOKS, Personal Representative of the Estate of Delores Short, Defendant/Appellant.

No. 53697.

Missouri Court of Appeals, Eastern District, Southern Division.

Dec. 13, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 11, 1989.

David L. Mayhugh, Flat River, for defendant/appellant.

Gary W. Wagner, Thomas L. Ray, Farmington, for defendant/respondent.

GRIMM, Judge.

This is a bench-tried interpleader action. The primary beneficiary of a life insurance policy on Delores Short murdered the insured. The Estate of Delores Short appeals from the trial court's judgment that the policy proceeds be paid to Catherine Spurgeon, the "contingent beneficiary," rather than to the estate.

The estate's sole contention is that the trial court erred in awarding the proceeds to the contingent beneficiary because the primary beneficiary, though disqualified from receiving the proceeds, survived the insured. We agree and reverse, because the policy lacked specific provisions defining the term "contingent beneficiary," and under the plain meaning of that term, as used in a life insurance policy, Catherine Spurgeon is not entitled to the proceeds since the primary beneficiary was living at the time the insured died.

The facts of the case were stipulated. On November 15, 1984, James L. Short and Delores Short, husband and wife, purchased a joint life insurance policy from the Reliable Life Insurance Company. The proceeds would be paid, and the policy terminated, when the first insured died. On their respective applications for the one

policy, Delores * named James, and James named Delores, as the primary beneficiary. Each named Catherine Spurgeon, James' mother, as the contingent beneficiary.

On September 8, 1985, James killed Delores. Thereafter, he pled guilty to second degree murder and received a life sentence. When the Estate of Delores Short, and Spurgeon, each claimed the proceeds, Reliable filed an interpleader action. The trial court awarded Spurgeon the proceeds.

The parties agree that a "beneficiary of [a] life insurance policy who murders the insured may not benefit from his wrongdoing by recovering the proceeds of the policy." *Higgins v. McElwee,* 680 S.W.2d 335, 342 (Mo.App.E.D.1984). Thus, although living at the time of Delores' death, James is disqualified from receiving the proceeds. *Id.*

We must determine, therefore, who receives the proceeds, based on the terms of Reliable's policy, when Missouri's public policy precludes the primary beneficiary from receiving those proceeds.

On the first page of the policy, Reliable promised to pay the sum insured "to the designated BENEFICIARY upon receipt of due proof of the first to die of the JOINT INSUREDS." Further down on that page, the policy provided "any proceeds payable because of the death of a Joint Insured will be paid to the Beneficiary with respect to such JOINT INSURED."

Delores' application is attached to, and made a part of, the policy. Section 9 of the application says "Beneficiary as to proceeds at death of the Insured

a. Primary James L. Short ..."

b. Contingent Catherine Spurgeon ..."

Neither the term "primary" or "contingent," as it relates to beneficiary, appears elsewhere in the policy. All references in the policy are to the "Beneficiary."

The policy contains one section on Beneficiary. It says:

BENEFICIARY. The Beneficiary, with respect to each Joint Insured, will be as named in the application, or later changed by the Owner. Upon the death of the first to die of the Joint Insureds we will pay proceeds in equal shares to the named beneficiaries that survive such Joint Insured. Unless otherwise provided in the beneficiary designation:

1. If any Beneficiary dies while both Joint Insureds are living, that Beneficiary's interest will pass to any other Beneficiaries according to their respective interests.

2. If there is no Beneficiary upon the death of a Joint Insured, (and there is no provision to the contrary), proceeds will be paid in one sum to the Owner, if living; otherwise proceeds will be paid to the Owner's estate.

Spurgeon, in claiming that she is entitled to the proceeds, seems to rely on that part of the above clause which directs payment of "proceeds in equal shares to the named beneficiaries that survive such Joint Insured." At one point in her brief she says, "use of the phrase 'named beneficiaries' does not in any way limit or exclude the Contingent Beneficiary." Later in her brief, Spurgeon says that the policy "merely states that the proceeds are to go to the surviving beneficiaries in equal shares unless otherwise designated in the Policy."

From these statements we conclude that Spurgeon is arguing that under the above quoted policy provision, the proceeds are divided one-half to the primary beneficiary and one-half to the contingent beneficiary. Under this interpretation, since there is no qualified primary beneficiary, the entire proceeds would be paid to the contingent beneficiary.

We do not read this provision in that way. The policy provision stating it will "pay proceeds in equal shares to the named beneficiaries that survive such Joint Insured" relates to the distribution of the proceeds among multiple beneficiaries within one beneficiary class, not between classes. Thus, if there are three named primary beneficiaries, three named contingent beneficiaries, and all six "survive such Joint Insured," each of the three primary beneficiaries would receive an equal share,

* We refer to individuals by their first names for ease of reading, and not out of disrespect.

i.e. one-third. The contingent beneficiaries would receive nothing.

The policy does not define "contingent beneficiary." In her brief, Spurgeon maintains that we must "give plain meaning to the unambiguous language of this Insurance Contract." We agree. *Protective Casualty Ins. v. Cook,* 734 S.W.2d 898, 905 (Mo.App.E.D.1987). The policy here is a *life* insurance contract, no other. "[P]lain and ordinary meaning is derived from the dictionary." *Missouri Public Service Co. v. Director of Revenue,* 733 S.W.2d 448, 449 (Mo. banc 1987). The plain meaning of "contingent beneficiary" is a "secondary beneficiary under a life-insurance policy whose rights mature if the primary beneficiary predeceases the insured." Webster's Third New International Dictionary (Unabridged) 493 (1976). Or, as stated in 17 Encyclopedia Americana 431, Life Insurance, "Contingent beneficiaries ... are eligible to collect proceeds if the primary beneficiary is not living at the time of the death of the insured." Thus, as used in a life insurance policy, the plain meaning of contingent beneficiary requires payment to be made to the contingent beneficiary when "the primary beneficiary predeceases the insured."

Here, James, the primary beneficiary, did not predecease Delores, the insured. James survived Delores and, but for the fact that he murdered Delores, would collect the proceeds as the primary beneficiary. Public policy, rather than the terms of this insurance policy, precludes payment to him. *Higgins,* 680 S.W.2d at 342.

In the insurance policy, there is no policy provision for the proceeds to be paid to the contingent beneficiary upon the disqualification of the primary beneficiary. Under the plain meaning of "contingent beneficiary," Spurgeon's rights mature "if the primary beneficiary predeceases the insured." Since James survived Delores, that condition did not occur; and Spurgeon's right to take as a contingent beneficiary did not mature.

Our conclusion is supported by *Beck v. Downey,* 191 F.2d 150 (9th Cir.1951), *vacated on other grounds,* 343 U.S. 912, 72 S.Ct. 646, 96 L.Ed. 1328 (1952), *reaff'd* 198 F.2d 626 (9th Cir.1952), *cert. denied* 344 U.S. 875, 73 S.Ct. 170, 97 L.Ed. 678 (1952). There, the policy provided that proceeds were payable at the insured's death to the primary beneficiary, "if living, otherwise to" the contingent beneficiary. The primary beneficiary murdered the insured and the contingent beneficiary claimed a right to the proceeds.

The *Downey* Court awarded the proceeds to the insured's estate, holding that:

> The contingency, which was a condition precedent to [the contingent beneficiary's] right to the proceeds, was that [the primary beneficiary] be not 'living' at the time of the death of the insured. In the ordinary meaning of the word 'living,' the contingency conditioning [the contingent beneficiary's] right to the fund never occurred.

*Id.,* 191 F.2d at 152. The Court concluded that "[h]ad there been an intent to have the proceeds go to the contingent beneficiary in the event of any *incapacity* of the beneficiary, while alive, to take the proceeds, plain language to that effect could and certainly would have been used." *Id.* This position was also taken in *Life & Casualty Ins. v. Martin,* 603 F.Supp. 281 (E.D.Mo., 1985).

Respondent contends that these cases are not applicable, because the insurance policy here does not contain the phrase "if living," which appears in the *Downey* and *Martin* insurance policies. This contention is without merit. While clearer language could have been used in this insurance policy, the plain meaning of the term "contingent beneficiary" and the policy provisions, in effect, limit the contingent beneficiary's interest to the same degree as the phrase "if living."

We note that each Joint Insured was the primary beneficiary of the other and the policy paid only upon the death of the first to die. It might be argued that our holding would prevent the contingent beneficiary from ever being entitled to the proceeds because the surviving joint insured would always take, if qualified, as the primary beneficiary. However, this argument over-

looks the provision for payment if both joint insureds had died simultaneously and it could not be determined who had died first. In this situation, the policy terms would apparently award the proceeds to the contingent beneficiary.

Because neither the primary beneficiary or the contingent beneficiary is entitled to the proceeds, we must determine whether the insured's estate should receive the funds.

The insurance policy provides:

If there is no Beneficiary upon the death of a Joint Insured, (and there is no provision to the contrary), proceeds will be paid in one sum to the Owner, if living; otherwise proceeds will be paid to the Owner's estate.

The effect of our holding is that there was no "beneficiary" at the time Delores died. Thus, this provision directs the proceeds to be paid to the Owner. However, in addition to being the primary beneficiary, James was also the policy owner. The same public policy underlying the rule in *Higgins v. McElwee, supra,* which prevents James from recovering as the primary beneficiary, also prevents him from recovering the proceeds as the Owner of the insurance policy. Since neither the named beneficiaries or the owner are entitled to the proceeds, the proceeds shall be paid to the Estate of Delores Short.

The judgment of the Circuit Court is reversed and the cause is remanded with directions to enter judgment in favor of the estate.

SATZ, J., concurs.

SMITH, J., dissents in separate opinion.

SMITH, Judge, dissenting.

I respectfully dissent.

"Beneficiary," by the language of the policy, includes both an identified "primary" and an identified "contingent." The term as used throughout the policy encompasses both those categories. "Primary" as an adjective means "first in order of time or development" or "first in rank or importance." Webster's Third New Inter-national Dictionary (Unabridged). A "primary beneficiary" is the one first in line to take upon the death of the insured. "Contingent" as an adjective means "dependent for effect on or liable to modification by something that may or may not occur." *Id.* A contingent beneficiary is one who takes if the primary beneficiary does not. The term is defined in Black's Law Dictionary, Fifth Edition, as "Person who may or will benefit if primary beneficiary dies or *otherwise loses rights as beneficiary....*" (Emphasis supplied).

The dictionary definitions utilized by the majority do not specifically exclude as contingent beneficiaries those who become eligible to take because of disqualification of the primary beneficiary. For purposes of defining the term they merely utilize the most common example of when a contingent beneficiary would take under the policy. I am unable to conclude that such dictionary definitions can be converted into a legal holding that "contingent beneficiary" excludes anyone whose rights under the policy mature for reasons other than the death of the primary beneficiary. It should be remembered that an insured may condition the payment of his insurance policy to the primary beneficiary upon any of many conditions, i.e. that the primary is married to him at the time of his death. If the condition fails the contingency is removed and the contingent beneficiary receives the proceeds regardless of whether the primary is living or not. It is simply not correct to say that a contingent beneficiary takes, if, and only if, the primary beneficiary predeceases the insured. The *Black's* definition recognizes the correct meaning of the term; the definitions utilized by the majority recognize only the most common circumstance where the contingent beneficiary takes.

Nothing in the policy before us conditions the right of the contingent beneficiary to take on the death of the primary beneficiary. The only condition is that the named beneficiary "survive the Joint Insured." Catherine Spurgeon was named as a beneficiary in Delores Short's application. She was therefore a named beneficiary of

the policy; her right to take was contingent upon the primary beneficiary not taking. When Delores Short died the obligation of the company was to pay the proceeds to the "named beneficiaries" that survive Delores Short. The order of payment would be first to the primary beneficiary and if he could not be paid, for whatever reason, then to pay the proceeds to the contingent beneficiary. When James Short was disqualified as a matter of law from receiving the proceeds, the contingency was removed and Catherine Spurgeon, as a named beneficiary, was entitled to the proceeds.

This conclusion is further bolstered by paragraph numbered 2 of the beneficiary section which specifically provides that the money goes to the owner or the owner's estate "if there is no beneficiary upon the death of a Joint Insured...." Catherine Sprugeon was a beneficiary under the application and she was in existence on the death of the joint insured, Delores Short. There was therefore a qualified beneficiary "upon the death" of Delores Short.

Whatever the merits of the cases of *Beck v. Downey* and *Life & Cas. Ins. v. Martin* relied upon by the majority, the policy before us does not contain the language of those policies requiring the death of the primary beneficiary as the trigger for the removal of the contingency. It was upon the "if living, otherwise to " language that both cases specifically turned. The majority has engrafted that requirement onto the policy here without support either in the policy or in the plain meaning of the terms used.

I would affirm the judgment.